FRIEDRICH v. GEISLER.†

(Court of Civil Appeals of Texas. San Antonio. Nov. 22, 1911. On Motion for Rehearing, Jan. 3, 1912.)

1. TRIAL (§ 295*)—INSTRUCTIONS—CONSTRUCTION AS A WHOLE.

A general instruction correctly defining negligence was not objectionable, where the question of negligence was specifically applied to the facts by the charge as a whole.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 703–717; Dec. Dig. § 295.*]

2. MASTER AND SERVANT (§ 293*)—INJURIES TO SERVANT—INSTRUCTIONS.

In an action for injuries to a servant while operating a planing machine, the court charged that if the jury believed that plaintiff was in the performance of his duties for the defendant, and while in the discharge of such duties was in the act of planing a short piece of lumber, which was pushed from under his hand, which fell on the knives, and if plaintiff was inexperienced with the use of the machine, and it was of a highly dangerous character, and plaintiff had not been instructed, etc., and this was negligence which was the proximate cause of the injury, and plaintiff was not himself negligent, he was entitled to recover, was not objectionable for failure to explain what were plaintiff's duties under the pleadings and the entire evidence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1160; Dec. Dig. § 293.*]

3. MASTER AND SERVANT (§ 293*)—INJURIES TO SERVANT—DANGEROUS MACHINE—INSTRUCTIONS.

Where plaintiff was injured while operating a planing machine, a charge submitting to the jury whether plaintiff was in the discharge of his duties, and whether in doing so his hand was cut by the planing knives, and whether he was inexperienced and unacquainted with the use of the machine, whether it was dangerous, and whether defendant had failed to instruct plaintiff, etc., sufficiently covered the question whether plaintiff saw the knives plainly and knew the danger of placing his hand against them, and that if he did no warning was necessary, but he assumed the risk of his own negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1160; Dec. Dig. § 293.*]

4. MASTER AND SERVANT (§ 291*)—INSTRUCTIONS—SHIFTING BURDEN OF PROOF.

An instruction that if the jury believed from the evidence that, at the time plaintiff,

---

defendant's servant, was injured, he was not in the performance of some duty for defendant, then to return a verdict for defendant, merely indicated that plaintiff could not recover if he was not in the performance of his duty, and was therefore not objectionable as shifting the burden of proof on defendant to prove that plaintiff at the time of his injury was not in the performance of his duty.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1140–1144; Dec. Dig. § 291.*]

**5. TRIAL (§ 234*)—INSTRUCTIONS—BURDEN OF PROOF.**

An instruction that the burden of proof was on plaintiff to establish "his case" by a preponderance of the evidence was not objectionable for failure to clearly state what "his case" was.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 537; Dec. Dig. § 234.*]

**6. TRIAL (§ 139*)—QUESTIONS FOR COURT OR JURY.**

Whether there is sufficient evidence to go to the jury is a question for the court, but whether the evidence preponderates in favor of one party or the other is for the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 338–341; Dec. Dig. § 139.*]

**7. MASTER AND SERVANT (§ 278*)—INJURIES TO SERVANT—FAILURE TO WARN.**

Evidence *held* to warrant a finding that plaintiff, a minor servant, was directed to operate a dangerous planing machine according to his own judgment and without instruction or warning as to the danger involved in the work, and, having been injured without contributory negligence, the master was responsible.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 972; Dec. Dig. § 278.*]

Appeal from District Court, Bexar County; Arthur W. Seeligson, Judge.

Action by Fritz Geisler, by his next friend, August Geisler, against Ed Friedrich. Judgment for plaintiff, and defendant appeals. Affirmed.

Leo Tarleton, for appellant. W. H. Lipscomb, Bryan F. Williams, and Marcus W. Davis, for appellee.

COBBS, J. This suit was instituted by August Geisler, the father, as next friend, to recover damages against appellant on the ground of negligence on the part of appellant in allowing Fritz Geisler, a minor over 15 years old, without warning him of the dangers, while in his service and discharge of his duty, to plane off or reduce the size of a piece of lumber about the length of one foot, and while in the act of doing so the said piece of lumber and material was pushed and pressed from under plaintiff's hand, causing his said hand to fall upon and come in contact with the planing knives, with the result that three of plaintiff's fingers were cut off, bruised, contused, and lacerated to such an extent as to require their amputation. It was further alleged as the result of the injury that his capacity to labor and earn money has been greatly and permanent-

ly impaired, and has suffered, and will in the future continue to suffer great physical pain and mental anguish, claiming damages to the extent of $5,000. The defense alleged and asserted was that plaintiff was experienced as a helper in and about the use of the machine that caused the injury; had been fully cautioned and warned and knew its character and danger from careless use; was not at the time engaged on any work for plaintiff or connected with plaintiff's business in putting the machine in motion; was attempting to make something for himself without knowledge of appellant or his foreman. These issues were submitted to a jury, and the damages were assessed at $250.

There was testimony introduced fully supporting the contention of both parties and is sharply contradictory of each other. All went to the jury and the finding of the jury upon the issues is binding upon this court, unless some error of law has been committed by the court on the trial of said cause or in the charges given or refused.

The proof showed the boy was an unusually bright boy, over 15 years old, and who had been attending school prior to his employment. He had, when injured, been working for about three months. Mr. Friedrich, the owner, had seen him at work and using the machine. He instructed the boy to make the necessary repairs to an old ice box. The boy said it was necessary in his judgment to use the machine in the manner in which he used it, as Mr. Friedrich had told him to do everything necessary to be done to it, and, having left it to his judgment, the boy supposed that was necessary. This work was being done in plain view of the others working in the shop, including Mr. Derr, the foreman under whom he was working. He did not know of any of the dangers, or that it was dangerous to use a longer piece of wood, nor did he know until after his injury that there were pieces of wood used to push short planks with. While pushing the plank, which was necessary, the same slipped, and his hand was caught with the knives used in the machine and thus injured. He had no warning at any time of the dangers.

The defendant contradicted this testimony, showed that the boy was warned, and warned at the very time, just before he was injured, of the danger; that what he was working at was and could not be for any repair of an ice box, but was something the boy was making for himself.

[1] Appellant's first assignment of error is, in effect, that the court erred, in the first paragraph of its charge, in giving an abstract definition of "negligence," and not succinctly instructing the jury as to what constitutes negligence applied to the facts of the case. The portion of the court's charge

objected to is as follows: "By 'negligence' as used in this charge is meant the failure to use ordinary care; and by 'ordinary care' is meant such care as a person of ordinary prudence would use under the same or similar circumstances."

We think that this charge must be construed in connection with the main charge, and has been cured thereby. Defendant might have required the court by special charge, if that paragraph stood alone, to define negligence as applied to the particular case, but that does not seem to have been done, and this assignment is overruled.

Appellant's second assignment of error calls into question the second paragraph of the court's charge, which is as follows: "If you believe from the evidence that on or about September 23, 1909, the plaintiff was in the performance of his duties for the defendant, and while in the discharge of such duties was in the act of planing a short piece of lumber, and while in the act of so doing the said piece of lumber was pushed and passed from under plaintiff's hand, causing his hand to fall upon and come in contact with the planing knives, and plaintiff's three fingers were cut and torn, and because thereof they are now in the condition that you find them to be; and if you further believe from the evidence that plaintiff was inexperienced and unacquainted with the use of the machine he was using; and if you further believe that said machine was of a highly dangerous character; and if you further believe from the evidence that the defendant failed to instruct plaintiff as to the safe manner of operating the said machine, and how to guard against the dangers, if any, and that it was negligence on the part of defendant to fail to instruct plaintiff as to the safe manner of operating said machine and how to guard the dangers, if any, incident to the operation thereof, if you so find, and that such negligence, if any, was the proximate cause of plaintiff's injuries; and you find that plaintiff possessed such a degree of intelligence as to know and appreciate the danger, if any, of his act, and was not guilty himself of contributory negligence—then you are instructed to return a verdict for the plaintiff."

[2] The first objection thereto is that the court fails to explain to the jury what were the duties of plaintiff under the pleading and the entire evidence. We do not think it necessary for the court in its general charge to go any further than it did in submitting to the jury whether or not the plaintiff was in the performance of his duties for the defendant. What those duties were, were facts before the jury, and it would not have been proper for the court to comment upon the facts, and it was not necessary to go any further to show, as contended by appellant, that at the time of his injury he was required to do what he was doing by the defendant or his foreman, and that such must be established by a preponderance of the evidence. We do not think the charge subject to the criticism, and we think the court went as far as was necessary.

[3] The second ground is that the charge of the court failed to submit to the jury whether or not plaintiff saw the knives plainly and knew the danger of placing his hand against them; then no warning from defendant or any one else was necessary, and he assumed the risk of his own negligence.

The charge fully covered this phase of the case. The charge submitted to the jury whether or not plaintiff was in the discharge of his duties, and if in so doing his hand was cut by the planing knives, and whether or not he was inexperienced and unacquainted with the use of the machine, and whether or not it was of a dangerous character, and whether or not the defendant failed to instruct plaintiff as to the dangerous character and how to guard against the dangers, and that it was negligence on the part of the defendant to have failed to instruct plaintiff as to the safe manner of operating the machine. It was fully submitted to the jury whether or not he was in the discharge of his duties and in the absence of any more definite instruction, which the defendant had a right to call for, we can see no error in this charge, and the assignment is therefore overruled.

[4] The third assignment of error complains, in effect, of the fourth paragraph of the charge of the court, that it shifted the burden of proof on the defendant to prove a negative and is contrary to the law, which clearly places the burden on plaintiff to show he was in the performance of some duty, and the first proposition thereunder is to the effect that the burden of proof was upon the plaintiff to establish his case by a preponderance of the evidence, and was reversible error for the court to shift the burden of proof, to require defendant to affirmatively establish the negative of plaintiff's contention. The portion of the paragraph of the charge complained of is set out under appellant's statement as follows: "If you believe from the evidence that at the time plaintiff was injured he was not in the performance of some duty for defendant, * * * then in either of these events you are instructed to return a verdict for defendant."

We do not understand the charge as appellant seems to. The burden of proof has not been shifted to the defendant; but the charge is to the effect that plaintiff cannot recover if he was not in the performance of his duty. In other words, the plaintiff's right to recover was based upon his establishing the fact that he was performing some duty for defendant, and he cannot be heard to complain, if it be a burden placed upon the plaintiff.

[5] The fourth assignment of error calls into question the charge of the court, as follows: "The burden of proof is upon the plaintiff to establish his case by a preponderance of the evidence." We can see no reason to agree with the appellant that such a charge is error "because the jury are nowhere told succinctly and clearly what his case is that he must establish by a preponderance of the evidence." The balance of the assignment it is not necessary to set out. It is sufficient only to say that it was for the court to determine whether there was evidence enough to go to the jury.

[6] It is for the jury to determine whether the evidence preponderates. If in any case there is not sufficient evidence to go to the jury, the court should instruct a verdict, and the court was here following the universal rule of instructing the jury as to how the plaintiff should establish his case by evidence.

The only error assigned on account of the refusal of the court to give a special charge is referred to in the fifth assignment of error, as follows: "The court erred in refusing to give to the jury charge No. 1 asked by the defendant."

The charge referred to is a request for a peremptory instruction for the jury to return a verdict for the defendant. The refusal of this charge was not error.

[7] Viewing this case in the light of the facts and the assignments of error calling in question portions of the court's charge in the abstract, we cannot see any error assigned that requires a reversal of the case. The evidence sufficiently supports the finding of the jury that the boy, although a minor, was of unusual intelligence; that he was directed by his master to do work according to his own judgment and discretion, which, in the opinion of the boy, was required to be done by the piece of machinery which was very dangerous to an inexperienced hand; that he was an inexperienced hand and had not been warned of the danger of doing the character of work that he was engaged in, and while so engaged in this work was injured. As to his degree of intelligence, as to whether he was guilty of contributory negligence in doing this work, and as to whether the machine was of itself dangerous, and everything connected with its use, were fully submitted to the jury, and their finding we are not at liberty to disregard.

We have fully examined all the assignments of error and the propositions submitted thereunder, and they are overruled.

The judgment of the court is affirmed.

## On Motion for Rehearing.

Because of the claim, made in the motion for rehearing, that this case is in conflict with the opinion of this court in Krisch v. Richter, 130 S. W. 186, we have thought it well enough to write an opinion on refusing this motion. The Krisch Case is urged, with much force and commendation, as the law on the subject controlling the disposition of this appeal in favor of appellant's contention. The writer, not having been a member of the court at that time, can, with propriety, likewise commend it for its clear statement of the principles of law governing such cases, which makes it take high rank in our jurisprudence as one of the very best considered and leading cases on the subject. It has had the approval of our Supreme Court, and is urged by counsel for appellant to secure a reversal of this case, contending, as stated, the opinion in this case is in conflict with it.

There is, to our mind, a wide difference in the facts surrounding the two cases.

Fritz Geisler, when he was injured, was 15 years of age, shown to be a boy of unusual intelligence and very bright and apt. He stated he had worked on ice boxes before the time he was hurt, and fixed up new ice boxes. His general duties, for three months prior to the time he was hurt, were, as stated by him: "I worked on all ice boxes, when Mr. Friedrich told me to do it, and, whenever there wasn't any work for me to do, Mr. Friedrich told me to go and get some work from some of the workmen and do what they told me to do. * * * Just before I went to the machine where I was hurt, I was working on an old ice box that Mr. Friedrich told me to repair. At the time I began work on that ice box, Mr. Friedrich was about four feet away from me. He told me to repair everything that should be repaired on the ice box. I made an examination of the ice box to see what should be repaired. I just looked it over, and then I did whatever was necessary. When I went to work, on the afternoon I was hurt, the first work I did, I started on the ice box right after 1 o'clock. The first thing we had to do was to clean it out. * * * And after we cleaned it out I started to repair on it. There were some old boards in it that were broke, and we had to take those out and put in new ones. I took these boards from the ice box from the right-hand side. There was a double partition, one side was to keep meat racks on, side holes, inside, and that was the one that was broke—the inside board. I went to the machine and was fixing something there to hang one of the meat racks on, and so I got hurt. The board I was fixing was about six inches long, about three inches wide, about three-quarters of an inch thick, and it was oak wood. I had to plane that board off, to fix it, cut it, to have it go on the wall, and then saw it—I was supposed to saw it. And then where the rack hangs on, had a rack to hang it on. I hewed a piece of oak wood and sawed it until it was about six inches long and three inches wide, and then I taken it and planed it, and just as I was planing it, why, the machine

dragged it over along my hand, and I got hurt. The planing machine is fixed about in the shape of this (illustrating by railing of witness stand), broader and longer than this, and had iron on one side of it, and you would have to put your hand on top of the board and shove it over the knife in order to plane it. When I got my hand hurt, the plane planed about half an inch on the board, and then the machine stopped, and I taken off some of my weight, and the machine started again and pulled the board from under my hand, and my hand went on the machine. They had four knives on the machine, and Mr. Friedrich told me, after I got hurt, that they revolved about 2,000 revolutions a minute. * * * These knives were fixed upon a square piece of iron, and the knives were something like the edge of that pencil (referring to pencil in Mr. Davis' hand). There were four knives around the cylinder. We had a belt that ran back of the machine, back here (indicating), which revolved these wheels for these knives here, and, in order to have this here, they had a brake further down here to throw the belt on here, and, if you threw the belt on here, these knives would revolve, and you would have to shove the board over it in order to have it planed. These knives extended very little above the surface or the top of the machine—about one-sixteenth of an inch. In planing a piece of material you would have to hold your hand on it and start shoving over against here and hold it down on the surface of the table and shove it across. When I planed this piece of timber, I had my hand on the middle of it; I had my hand on it like this. As the machine moved, it did not move the timber, and the knives would not pull it across; you would have to shove it across. If you didn't shove it across, the knives would revolve it the other way. I shoved it across. When I got hurt, the machine had planed about half an inch, and the machine started to stop, and I taken off some of my weight. The machine started again, and as I put the timber on it, why, it threw the board back, and my hand fell on it. As the board fell from under my hand, it fell backwards, came back, my hand fell on it, and I got cut. * * * My fingers were cut off entirely at the time of the accident. The flesh was cut off entirely and the bone was cut deep. * * * Mr. Friedrich knew my age. * * * Mr. Friedrich, nor any of his foreman there, ever warned me of any danger in the use of this machine. I never had any warning or instructions with reference to the use of that machine. They never did warn me. Mr. Friedrich told me to repair everything that was to be repaired on that ice box; he wanted to send it out the next day. It was necessary for me to plane this piece of board in order for me to repair that ice box. * * * I never did have any experience in planing a short board, of this length, size, and weight, that I have described, that I was using at the time I was hurt. * * * I didn't know then the particular effect or the tendency of using the short board that you used upon a machine like that. * * * I had used that planing machine in the presence of Mr. Friedrich before that. Mr. Friedrich was standing there watching me while I was working on it. * * * Mr. Friedrich told me, after I got hurt, that a short board ought not to be used on the machine. * * * He never told me that before I got hurt. If he had told me that it was dangerous, I would not have used that board."

On cross-examination he stated: "I had to do work, whatever I was told to do. Sometimes I worked by myself, and sometimes I worked with somebody else. I did planing. I went there as an apprentice. As to whether I went there to do that work and run planers, I worked with everything that ever had to be done, like Mr. Friedrich told me on the box; said to do everything that has to be done on it, and I went to do everything that was to be done on it. He told me to do everything that was to be done on it." He further stated: "He (meaning Mr. Friedrich) never did tell me anything about the machine. He never gave me a word of warning. I never knew that I had to work on the machine. * * * These push blocks were not on the machine where I was hurt, at any time prior to the time I was hurt. I didn't see it until a week after I was hurt. That was the first time I seen that. I had never seen one like that before. A push block had never been used in my presence on that machine. I had never used it and had never seen any one else use it." He further stated: "Mr. Groos did not call me to let it alone; I didn't hear him. The machine I was working on makes a very buzzing sound, and standing next to the machine, if somebody hollered at you, you couldn't hear them. I did not hear that. I did not turn around and look at him. I did not take the block out and turn it around and put it in the other way. That is not the block."

The evidence also clearly shows that the boy, at that time, did not know of the danger of the machine. He had been there but a short time, and was inexperienced, and had not been warned, as shown by the facts, and as stated in our opinion.

In the Krisch Case the boy was between 17 and 18 years of age, had been at work in the bakery for nearly a year, had seen the machine in operation, and knew that the cogs in the wheels were dangerous when the machine was in motion; and there was nothing to prevent him from seeing the two cogwheels, which he cleaned for about a year.

Judge Fly, in his opinion in the Krisch Case, among other things, said: "The un-

controverted testimony of the defendant was to the effect that he always told his employés not to put their fingers in the cogs or any part of the machine. The whole of the evidence indicated that plaintiff must have known, and did know, that it was dangerous for him to work with a rag about his fingers in close proximity to the cogs of a moving machine. The danger was open and and just as apparent to him as to the foreman. It did not take any skill or extra knowledge for any human being, even of very limited mental capacity, to know that if the fingers are placed between interlocking cogs of a moving machine that they will be injured."

We have quoted so much from the testimony in order that the facts, in the Krisch Case, may be readily distinguished from the facts in this case.

In the Krisch Case the boy had been working with the machine, and cleaning the cogs daily, for a year, and was 17 or 18 years old.

In this case the boy was 15 years of age, had been working only about three months, had not been warned, and could not see the danger that might come to him in shoving a short piece of wood across the knives any more than a longer piece; nor did he have any instructions that in planing short pieces of wood they had to be manipulated in another way.

We can see no conflict in the two cases, but believe that the Krisch Case is authority for the disposition of this case, and the motion for rehearing is refused.